# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:20-cv-00152-MR
### CRIMINAL CASE NO. 1:18-cr-00072-MR-WCM-1

| | | |
|---|---|---|
| JONATHAN KEENAN BERKLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [Doc. 1].

## I.   BACKGROUND

Petitioner was charged in a nine-count Bill of Indictment along with two co-Defendants with offenses including conspiracy to distribute and to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(Count Two); Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count Three); possession of a firearm in furtherance of a crime of violence and drug trafficking crime, and aiding and abetting the same, in

violation of 18 U.S.C. §§ 924(c) and 2 (Count Four); possession of a firearm by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3) (Count Five); and unlawful transport of a firearm with intent to commit a felony in violation of 18 U.S.C. § 924(b) (Count Nine). [Criminal Case No. 1:18-cr-00072-MR-WCM ("CR") Doc. 4].

Petitioner signed a written Plea Agreement pursuant to which he agreed to plead guilty to Count Three (Hobbs Act robbery) in exchange for the Government's dismissal of the remaining counts. [See CR Doc. 38 at 1]. By signing the Agreement, Petitioner admitted to being guilty of Count Three. He further acknowledged: his maximum sentencing exposure; that the sentence had not yet been determined and an advisory guideline sentence would be calculated; that the sentence, up to the statutory maximum, would be determined at the Court's sole discretion; and that he would not be able to withdraw the plea as a result of the sentence imposed. [Id. at 1-2]. The parties agreed to jointly recommend a base offense level of 20 and a seven-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(A) because a firearm was discharged. [Id. at 2]. By signing the Agreement, Petitioner further acknowledged that he was waiving his right to be tried by a jury, to be assisted by an attorney at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. [Id. at 4]. Petitioner expressly

2

agreed to waive his appellate and post-conviction rights except for claims of ineffective assistance of counsel and prosecutorial misconduct. [Id.].

A Rule 11 hearing was held before Magistrate Judge W. Carleton Metcalf on February 8, 2019. [CR Doc. 109]. Petitioner stated that he and counsel had reviewed the Indictment and the Plea Agreement together. [Id. at 6]. Judge Metcalf read aloud Count Three of the Indictment and the statute to which Petitioner was pleading guilty, explained the elements of the offense, and advised Petitioner of his potential sentencing exposure of up to 20 years' imprisonment. [Id. at 6-9]. Petitioner stated that he understood the charges against him, including the maximum and minimum penalties and the elements of the offense. [Id. at 9]. Petitioner acknowledged that counsel had discussed the Sentencing Guidelines with him, that he understood the Court could impose any sentence within the statutory limits, and that his sentence may be lower or higher than the guidelines range. [Id. at 10-11]. Petitioner stated that he understood that the plea would be binding even if the sentence was more severe than he expected. [Id. at 12]. Petitioner confirmed that by pleading guilty, he was waiving the right to plead not guilty, the right to have a speedy trial before a jury with the assistance of counsel, the right to summon witnesses to testify on his behalf, the right to confront witnesses against him, and the right to receive the presumption of innocence.

[Id. at 12-13]. Petitioner further stated that he was in fact guilty of Count Three; that his plea was freely and voluntarily entered with a full understanding of what he was doing; that he was not promised anything other than the promises contained in the Plea Agreement; and that he was not threatened to enter the Plea Agreement against his wishes. [Id. at 14, 18-19]. Petitioner acknowledged that he knowingly and willingly accepted the Plea Agreement's limitation on the right to appeal and file post-conviction proceedings. [Id. at 23]. Petitioner confirmed that he had ample time to discuss possible defenses with counsel and was entirely satisfied with counsel's services. [Id. at 24].

In support of Petitioner's guilty plea, the parties submitted a written Factual Basis that sets forth the following information:

1. SAWYER DOXTAD was a student at Western Carolina University in the fall semester of 2017. During that time, he resided in an apartment at 39 Camden Place, Sylva, North Carolina. At that time, DOXTAD engaged in distributing marijuana in and around the university.

2. Sometime in September of 2017, DOXTAD met JOHNATHAN BERKLEY who was from Charlotte, North Carolina but was not a student at Western Carolina University.

3. Sometime in September or October of 2017, BERKLEY moved in to DOXTAD's apartment and the two then engaged in dealing marijuana together. After BERKLEY moved in to DOXTAD's apartment, BERKLEY invited his associate, KENDRICK DAVIS that he knew from Charlotte, to come to Sylva and also move in to DOXTAD's apartment. DAVIS thereafter

4

traveled to Sylva and moved in to DOXTAD's apartment and all three engaged in dealing marijuana together.

4. DOXTAD and BERKLEY identified local marijuana customers around Western Carolina University through a social media chatting "app" in a custom group called "Wheestaylit." Another individual who participated in the "Wheestaylit" group was "J.R." J.R. was also a marijuana dealer. Sometime in October of 2017, J.R. posted a picture of himself on the "Wheestaylit" group with multiple pounds of marijuana taken from inside of his car.

5. BERKLEY and DOXTAD eventually decided to rob J.R. of his marijuana. This marijuana would then serve as a source of supply for their marijuana dealing. DAVIS agreed to participate in the robbery.

6. On October 24,2017, DAVIS and DOXTAD drove from Sylva to Friendly's Pawn Shop in Mountain City, Georgia for the purpose of buying a gun. DOXTAD drove his pickup truck and DAVIS rode in the passenger seat. Upon arriving at the pawn shop, DAVIS selected a black Mossberg Maverick 20 gauge pump action shotgun which he purchased in his true name. DAVIS and DOXTAD were recorded by the store's video surveillance system during their time there. DAVIS and DOXTAD then departed the pawn shop and began the return trip to Sylva.

7. On the way back to Sylva, DAVIS and DOXTAD stopped at the Walmart in Franklin, North Carolina to purchase additional robbery supplies. DOXTAD purchased 20 gauge Winchester brand "bird shot" shotgun shells, masks, gloves, and snacks. They then drove back to Sylva and met back up with BERKLEY.

8. That same day, DOXTAD and BERKLEY arranged through the "Wheestaylit" group to meet J.R. under the pretense of buying the marijuana from him that he had previously posted on the messaging app. J.R. then met DOXTAD and DAVIS in his car at a location near Western Carolina University's campus while BERKLEY hid in some bushes with the shotgun. J.R. only

5

brought a sample of the marijuana to the meeting though, so the three called off the robbery and told J.R. that they would meet him later in the day when he had all the marijuana. J.R. continued to believe that he would be selling DOXTAD and DAVIS the marijuana.

9.     Later that evening, BERKLEY, DAVIS, and DOXTAD arranged through "Wheestaylit" to meet J.R. at 31 Antler Drive, Building 200, Apt 32, Cullowhee, North Carolina. This was an apartment that served as the residence for several of J.R.'s associates but J.R. did not himself live there.

10.    Around 8:30 PM that night, BERKLEY, DAVIS, and DOXTAD departed DOXTAD's apartment in DOXTAD's pickup truck.  DOXTAD drove the vehicle and the loaded shotgun was also in his vehicle. The three arrived outside the target apartment building.  BERKLEY donned a mask and carried the shotgun. DAVIS and DOXTAD walked up the apartment stairs with BERKLEY following some distance behind.  DAVIS and DOXTAD knocked on the door of the apartment and J.R. opened the door for them thinking that he would be selling them the marijuana.  At this time, including J.R., the apartment was occupied by five people.

11.    Upon opening the door, J.R. realized it was a robbery and J.R. grabbed the barrel of the shotgun which BERKLEY was holding and it discharged during a struggle.

12.    DAVIS ran away upon hearing the shotgun fire. BERKLEY and DOXTAD struggled with J.R. for a moment and then ran away with the shotgun. BERKLEY, DAVIS, and DOXTAD did not succeed in stealing any marijuana from J.R.

13.    BERKLEY, DAVIS, and DOXTAD fled from the scene. BERKLEY and DAVIS left the area some time later and stopped selling marijuana around Western Carolina University.

14.    Marijuana dealing affects interstate commerce.

15.    The attempted robbery of J.R. obstructed, delayed, and affected his marijuana dealing business.

[CR Doc. 37 at 1-4].

Petitioner certified at the Rule 11 hearing that the Factual Basis was true and accurate and that, if the matter had proceeded to trial, the Government would have been able to prove each of the statements in the Factual Basis beyond a reasonable doubt.  [CR Doc. 109 at 17].

The Presentence Investigation Report ("PSR") copies the offense conduct from the Factual Basis *verbatim*.  [CR Doc. 75 at ¶¶ 6-15].  In addition to the Factual Basis, the PSR states that:

> during the struggle between Berkley and J.R., the shotgun was discharged and a resident of the apartment, C.A., was struck in the leg, injuring him.  After C.A. was struck, he rolled off the chair and crawled into his bedroom, where medical personnel subsequently treated him.

[Id. at ¶ 7].

The PSR calculated the base offense level as 20 for a violation of § 1951.  [Id. at ¶ 14].  Seven levels were added pursuant to U.S.S.G. § 2B3.1(b)(2)(A) because a firearm was discharged during the commission of the offense.  [Id. at ¶ 15].  Four levels were added pursuant to U.S.S.G. § 2B3.1(b)(3)(B) because the investigation determined that the victim sustained serious bodily injury as a result of the offense.  [Id. at ¶ 16].  One level was added pursuant to U.S. Sentencing Guidelines § 2B3.1(b)(6)

because the investigation revealed that the taking of marijuana was the object of the offense. [Id. at ¶ 17]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 29. [Id. at ¶¶ 23-25]. Petitioner had zero criminal history points and a criminal history category of I. [Id. at ¶ 29]. The resulting advisory guideline range was 87 to 108 months' imprisonment followed by between one and three years of supervised release. [Id. at ¶¶ 57, 60]. No objections to the PSR were filed.

The sentencing hearing was held on August 20, 2019. The Court permitted counsel to present an oral motion for a below-guideline sentence, as defense counsel was unable to file a written motion for downward departure prior to the hearing due to an injury, and Petitioner did not wish for the hearing to be continued so that a written motion could be filed. [CR Doc. 111 at 4]. The Court then questioned Petitioner about his guilty plea. In response, Petitioner stated that he recalled the Rule 11 hearing, answered the questions before Judge Metcalf truthfully, and would answer the questions the same if asked again. [Id. at 6-7]. Petitioner confirmed that he was pleading guilty because he was guilty and that his plea was not the result of any threat, force, or promise other than the promises contained in the Plea Agreement. [Id. at 7-8]. Petitioner explained that he had not seen a physical copy of the PSR before the sentencing hearing, but that counsel had

reviewed it with him thoroughly and also had showed it to him the morning of sentencing.  [Id. at 10].  Defense counsel explained that Petitioner was "adamant" that she not send his copy of the PSR to the jail.  [Id. at 11].  Petitioner stated that he understood the PSR and defense counsel confirmed that she had an adequate opportunity to review it with Petitioner.  [Id.].

Defense counsel conceded that the Guideline Range was correctly calculated in the PSR, but argued that the advisory guideline range was too high.  [Id. at 12].  Counsel noted that Petitioner did not join his co-Defendants in purchasing a shotgun in Georgia or in setting up the drug deal because he wanted "no part of this" and thought they were "goofing off," but that they convinced him at some point to put on a mask and go to the meeting with the intent of scaring the drug dealer into giving marijuana to them.  [Id. at 16-17].  Counsel argued that Petitioner and the co-Defendants did not intend to discharge the firearm and that it went off accidentally during a "wrestling match" at the door when the other person grabbed the barrel of the shotgun and it was discharged.  [Id. at 18].  Counsel argued that a sentence below five years' imprisonment would be appropriate under the circumstances.  [Id. at 24].  The Government requested a sentence at the top of the advisory range based on the circumstances of the offense and because Petitioner was receiving the benefit of the dismissal of a § 924(c) charge in exchange

for his guilty plea. [Id. at 25-29]. Petitioner chose to address the Court. He expressed his remorse and took "absolute responsibility" for the incident. [Id. at 32].

After considering the relevant factors, the Court imposed a downward variance sentence of 72 months' imprisonment followed by three years of supervised release to reflect the seriousness of the offense, to afford adequate deterrence, and to take into account Petitioner's potential for rehabilitation, remorse, background, characteristics, age, and to avoid unwarranted sentencing disparity among Defendants. [Id. at 34-35, 38-40]; [See CR Doc. 99] (Statement of Reasons). The Judgment was entered on August 21, 2019. [CR Doc. 98]. Petitioner did not appeal.

Petitioner filed the instant *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255 on June 14, 2020.[1] In his Motion, Petitioner argues that counsel provided ineffective assistance prior to the entry of his guilty plea, coerced him into pleading guilty, and provided ineffective assistance at sentencing.

The Government has filed a Response [Doc. 5], and Petitioner filed a Reply [Doc. 6].

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings …" in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION[2]

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  <u>See</u> U.S. Const. Amend. VI.  To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." <u>Id.</u> at 688.   A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."   <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).  The prejudice prong inquires into whether counsel's deficiency affected the judgment.  <u>See</u> <u>Strickland</u>, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u> at 694.  The petitioner "bears the

---

[2] The Petitioner's arguments have been reorganized and restated.  Any argument or claim not specifically addressed in this Order has been considered and rejected.

Case 1:18-cr-00072-MR-WCM   Document 112   Filed 04/02/21   Page 12 of 24

burden of affirmatively proving prejudice." <u>Bowie v. Branker</u>, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. <u>Strickland</u>, 466 U.S. at 670.

### A. Involuntary Plea

First, Petitioner contends that counsel's ineffective assistance rendered his guilty plea is involuntary. Petitioner argues that counsel pressured him to plead guilty by threatening a sentence of 20 years or more if he went to trial; failed to inform him of the Plea Agreement's terms and consequences; misadvised him that he would receive a sentence of 53 to 61 months if he pleaded guilty, rather than the 72-month sentence he actually received; acted "in concert" with the U.S. Attorney's office to ensure that Petitioner pleaded guilty to Hobbs Act robbery; and failed to negotiate a more favorable plea. Petitioner contends that he decided to plead guilty because he feared going to trial and receiving a longer sentence. Petitioner argues that, had counsel correctly informed him of the relevant circumstances and likely consequences of pleading guilty, there is a reasonable probability that he would have gone to trial or pleaded straight up without waiving his appellate rights. He asks the Court to vacate his guilty plea so that he may plead anew.

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process.  See Missouri v. Frye, 566 U.S. 134 (2012).  Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process.  Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013).  Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Petitioner's claims that ineffective assistance of counsel rendered his plea involuntary are conclusively refuted by the record.  At the Rule 11 hearing, Petitioner affirmed, under oath and in open court, that he understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty.  [CR Doc. 109 at 6-13].  He further affirmed that his guilty plea was freely and voluntarily entered and he specifically

denied that anyone had forced or threatened him to plead guilty, or promised him anything in exchange for the plea, other than the terms of the Plea Agreement. [Id. at 14, 18-19]. He acknowledged that he was guilty of Count Three and agreed that the Factual Basis was true and accurate and that the Government would be able to prove each of the statements in it beyond a reasonable doubt were the case to proceed to trial. [Id. at 17]. Petitioner further stated that he understood that the Court could impose any sentence up to the 20-year statutory maximum. [Id. at 10-12]. At the sentencing hearing, Petitioner confirmed that his answers at the Rule 11 hearing were true, that his guilty plea was freely and voluntarily entered, and that he would answer the questions the same if he was asked the same questions again. [CR Doc. 111 at 6-8].

The foregoing complies with Rule 11 and demonstrates that Petitioner's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences and that the guilty plea was supported by an independent factual basis. See Fed. R. Crim. P. 11(b)(1)-(3); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). Petitioner's present self-serving and unsupported claims that counsel worked in concert with the Government, promised him a lower sentence than the one he received, coerced him to plead guilty, and failed to explain the plea's nature

and consequences to him, are contradicted by his own sworn statements at the Rule 11 hearing and are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary). Counsel's warnings that Petitioner may be imprisoned for more than 20 years if he lost at trial was an accurate statement of fact and law; Petitioner's understandable apprehension and decision to plead guilty was a reasonable reaction to the circumstances in which Petitioner found himself and in no way resulted from ineffective assistance of counsel or coercion.

Moreover, Petitioner has failed to demonstrate prejudice. Petitioner conclusively states that there is a reasonable probability that he would have gone to trial had counsel performed effectively and that he would have received the same sentence had he gone to trial or pleaded guilty "straight up." The Plea Agreement was highly beneficial to Petitioner. The Government agreed to dismiss five serious charges in exchange for

Petitioner's guilty plea to Count Three, one of which was a § 924(c) violation that carried a mandatory consecutive 10-year sentence. [See CR Doc. 75 at ¶ 58]. The decision to go to trial would not have been objectively reasonable in light of the extremely favorable plea offer and the strong evidence of Petitioner's guilt, including the testimony of a cooperating co-Defendant. See United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); see, e.g., United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming).

Finally, Petitioner contends that effective counsel would have negotiated a more favorable plea agreement. This claim is purely speculative. Petitioner has failed to come forward with any evidence that, if counsel had performed differently, a more favorable plea offer was forthcoming from the Government or would have been accepted by the Court.

The record reveals that Petitioner's guilty plea was knowing and voluntary and that no ineffective assistance of counsel occurred that rendered the plea involuntary. This claim is therefore denied.

## B.    Pre-Plea Ineffective Assistance of Counsel

Petitioner argues that counsel was ineffective for: failing to appear at the arraignment; failing to discuss the case adequately with Petitioner and his family; telling Petitioner about the Government's evidence rather than showing it to him; failing to conduct an adequate investigation of the facts by submitting discovery requests, interviewing witnesses, seeking fingerprint analysis of the firearm and moving to hire a private investigator; and failing to file any substantive pretrial motions.  Petitioner argues that an adequate investigation of the facts would have revealed that the Petitioner was treated unfairly because of his race and that there was no direct evidence—other than the testimony of a cooperating co-Defendant—that Petitioner purchased or possessed a weapon at any time.

 "[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges."  United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993).  Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  Blackledge v. Perry, 417 U.S. 21, 29-30 (1974).

Petitioner entered a knowing and voluntary guilty plea to Count Three.  See Section A, supra.  The Petitioner's knowing and voluntary guilty plea

waived any nonjurisdictional defects that preceded it, including claims of ineffective assistance of counsel. Petitioner's knowing and voluntary guilty plea excused counsel from further investigating the facts of the case, filing pretrial motions, and preparing a defense. Petitioner has failed to come forward with any evidence or legal theory that had a reasonable probability of resulting in a different outcome had counsel undertaken additional investigation and preparation or filed pretrial motions.

Petitioner's claim that counsel provided ineffective assistance before Petitioner pleaded guilty was waived by his knowing and voluntary guilty plea and is denied.

### C.    Sentencing

Petitioner contends that counsel provided ineffective assistance with regards to sentencing by failing to: file written sentencing materials including PSR objections; provide Petitioner a written copy of the PSR ahead of the sentencing hearing; meet with Petitioner and provide him advice ahead of the sentencing hearing; present arguments for sentence mitigation; and object on the grounds that the sentence was substantively unreasonable.

Petitioner's claims that counsel provided ineffective assistance with regard to sentencing are meritless. The record reflects that counsel was unable to file written sentencing materials because she suffered an injury

19

and she did not seek to reschedule the hearing because Petitioner did not want to delay his sentencing. [CR Doc. 111 at 4]. Counsel's failure to file any written materials ahead of the sentencing hearing is irrelevant because the Court allowed counsel to present her arguments orally at the sentencing hearing. [Id.]. Although Petitioner complains generally that counsel's oral presentation was ineffective, he has failed to come forward with any evidence or argument that would have likely resulted in a lower sentence had counsel presented it differently. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

Petitioner further complains that he did not have a physical copy of the PSR ahead of sentencing and that counsel did not adequately prepare him for the sentencing hearing. However, the record reflects that Petitioner did not have a copy of the PSR because he insisted that counsel not send it to him at jail, and that he had thoroughly discussed the PSR with counsel prior to the hearing even without having a physical copy of the PSR. [Id. at 11]. Petitioner admitted at the sentencing hearing that he had discussed the PSR thoroughly with counsel, understood it, and had received a copy on the morning of the sentencing hearing. [Id. at 10-11]. Petitioner fails to explain

20

how the delay in receiving a physical copy of the PSR until the morning of the sentencing hearing prejudiced him in any way. Further, Petitioner does not explain how additional discussion and preparation with counsel would have had a reasonable probability of resulting in a lower sentence. See Dyess, 730 F.3d at 354.

Petitioner contends that counsel was ineffective for failing to file PSR objections, but he has failed to identify any meritorious PSR objection that reasonable counsel would have raised and which would have had a reasonable probability of resulting in a lower sentence. Counsel was not ineffective for failing to object to the seven-level enhancement for the discharge of a firearm pursuant to U.S.S.G. § 2B3.1(b)(2)(A) because that enhancement was expressly included in the Plea Agreement and was supported by the Factual Basis. [CR Doc. 38 at ¶ 8(a)]; [CR Doc. 27 at ¶ 11] ("J.R. grabbed the barrel of the shotgun which BERKLEY was holding and it discharged during a struggle"). Counsel was not ineffective for failing to object to the one-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(6) because the Factual Basis demonstrates that the object of the offense was marijuana. [CR Doc. 37 at ¶¶ 8-11] (addressing the planning and execution of a drug rip-off from a marijuana dealer). Further, counsel was not ineffective for failing to object to the four-level enhancement pursuant to

21

U.S.S.G. § 2B3.1(b)(3)(A) for victim injury because the Probation Officer's investigation revealed that an occupant of the apartment where the offense occurred was struck in the leg when the shotgun discharged, resulting in serious bodily injury. [CR Doc. 75 at ¶¶ 7, 16]. This finding is consistent with the Factual Basis in which Petitioner admitted that the shotgun he was holding discharged during a struggle and that the apartment where this incident occurred was occupied by five people. [See CR Doc. 37 at ¶¶ 10-11]. Petitioner has not come forward with any evidence demonstrating that the PSR's statements that a victim was struck and seriously injured when the shotgun discharged are untrue. Petitioner's conclusory allegation that counsel should have objected to the PSR fails to demonstrate either deficient performance or prejudice.

Petitioner's contention that counsel's oral presentation at sentencing was unsuccessful is conclusively refuted by the record. Counsel argued that the advisory guideline range was too high and that Petitioner should be sentenced below the guidelines due to the circumstances of the offense, Petitioner's history and characteristics, and Petitioner's involvement in the offense conduct as compared to his co-Defendants. This argument was successful in that counsel achieved a below-guideline sentence even though the Government requested a sentence at the top of the advisory range.

Petitioner has failed to come forward with any evidence or argument that counsel should have presented that had a reasonable probability of resulting in an even lower downward variance.  Further, Petitioner's contention that counsel should have argued that his below-guidelines sentence was substantively unreasonable is lacking in any legal basis.  See United States v. Susi, 674 F.3d 278, 289 (4th Cir. 2012) (holding that a below-guidelines sentence is entitled to a presumption of reasonableness).

Petitioner has failed to demonstrate that counsel performed deficiently in any way with regards to sentencing or that, had counsel performed differently, there is a reasonable probability that he would have received an even lower sentence than the below-guidelines sentence that he received.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when

relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

### ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate under 28 U.S.C. § 2255 [Doc. 1] is **DENIED AND DISMISSED.**

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: April 2, 2021

Martin Reidinger
Chief United States District Judge